[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought by the Connecticut Department of Environmental Protection (DEP) against Birken Manufacturing Company (BKN) of Bloomfield and its Vice-President and legal counsel, Gary Greenberg (GG) alleging violations of Connecticut environmental laws. The DEP seeks civil penalties for such violations as well as injunctive relief to require the defendants to comply with such laws in the future . . . .
 OVERVIEW
Birken is in the business of manufacturing precision components for the commercial airline industry as well as for aircraft of the armed services. In doing so it utilizes substantial quantities of chromium which is considered a hazardous waste metal. The DEP has accused the defendants of violating hazardous waste statutes and regulations by not having sufficient safety controls of the chromic acid it generates and permitting chromic acid to seep into BKN's soil thereby contaminating the soil and the groundwater therein and not taking the action necessary to correct these violations. It further claims that the defendants have allowed chromic acid to be discharged into the atmosphere thereby exposing the public to risk of cancer and other maladies and failing to take the action necessary to prevent such air pollution. These claims will be addressed hereafter in accordance with the specific allegations of the plaintiffs complaint.
Defendants have claimed that the DEP's long delay in seeking enforcement action against the defendants, the lack of responsiveness by DEP to reports and communications from the defendants, contusing regulations, mixed signals from DEP and the federal Environmental Protection Agency (EPA) the enforcement responsibility as to BKN having been taken over from the DEP by the EPA from 1986 to 1992 and the failure of the DEP to furnish adequate notice of the alleged violations to the defendants, i.e. DEP's policy of not providing generators of waste, such as BKN, with copies of DEP's reports of investigations, have all hampered BKN's ability to comply with hazardous waste and air quality statutes and regulations. Although many of these claims are valid, the Court cannot make a finding of no violations because of them. At the same time the Court will consider these factors in determining the priority and/or seriousness of the violations and the good faith or lack thereof by the defendants when the Court assesses penalties.
The Court is well aware of the guidelines it should use in setting civil penalties under Connecticut's environmental protection laws as set forth in Carothers v. Capozziello, 215 Conn. 82, 103-4 (1990). They are, however, only guidelines and are to be considered in the exercise of the Court's wide discretion. Id. 103. Further, the Court is not limited to these guidelines nor is it limited in considering the relative importance of each guideline. As the Court stated in Carothers v. Capozziello:
"Those factors include, but are not limited to: (1) the size of the business involved; (2) the effect of CT Page 9500 the penalty or injunctive relief on its ability to continue operation; (3) the gravity of the violation; (4) the good faith efforts made by the business to comply with applicable statutory requirements; (5) any economic benefit gained by the violations; (6) deterrence of future violations; and (7) the fair and equitable treatment of the regulated community."
citations omitted, I.D. 103-104.
The Court finds that BKN is (1) a small to medium size company (165 employees), (2) the penalties to be imposed will not preclude BKN's ability to continue operation, (5) the economic benefits gained by the violations are insignificant, (6) this decision will deter future violations and this decision will result in (7) fair and equitable treatment of the regulated community. As for guidelines (3) the gravity of the violation and (4) the good faith efforts made by the defendants to comply with applicable statutory requirements, they will be discussed specifically hereafter in addressing the specific violations alleged in the plaintiffs complaint.
However, before discussing the specific allegations, the Court makes the following observations as to the gravity of the violations. It is difficult for the Court to accept plaintiffs contention that the violations should be classified as high priority. Such a classification is belied by the lengthy delays by the DEP and the Attorney General in taking enforcement action. The delay by the DEP is a violation of its own Enforcement Response Policy (ERP) established in June 1992, (Plaintiffs Exh. 38, pgs. 12-13), which requires a referral to the Attorney General within sixty (60) days after discovery of a High Priority Violation and within ninety (90) days of discovery of a Medium Priority Violation and discovery of a Low Priority Violation. The violations at issue here are those "discovered" by DEP Inspector Mark Jepsen (Jepsen) during his inspection of September 9 and 11, 1992 and November 16 and 17, 1993. The referred to the Attorney General was made in November, 1994, more than two years after the September, 1992 inspection and one year after the November, 1993 inspections. It then took the Attorney General another two years to file this action (return date of December 8, 1996). The Attorney General did not view this as a high priority case (perhaps, from a lack of a sense of urgency by the DEP) as evidenced by the fact that the case appeared on the dormancy calendar for April 28, 1998, nearly a year and five months following the commencement of this action. Further, if the violations were high priority, why did the DEP and the Attorney General fail to seek a temporary injunction to halt these allegedly egregious and dangerous violations? There are other examples of delay such as the fact that BKN submitted a closure plan for the lagoons in 1983 and completed CT Page 9501 removal of the contaminated soil by November 11, 1985, yet the DEP didn't respond to the proposed closure plan until 1992, nine years after it was submitted. There are other examples as well, but suffice it to say that the DEP's conduct over the years was almost a laissez-faire attitude which is certainly contradictory to its claim that the defendants were serious violators and the violations were of high priority.
As to whether the defendants made good faith efforts to comply with applicable statutory requirements, the Court finds by a preponderance of the evidence that they did. They retained at considerable expense Mark Franson as their environment consultant as far back as 1987. He followed the 3013 order of the EPA which had enforcement control from 1986 to 1992. EPA's main concern was investigation of the site by the defendants, and Franson presented and followed approved phases of the investigation. The investigation and clean up of contamination is, with EPA' s approval, to be completed by 2005, focusing primarily on the source of the contamination. Meanwhile, the defendants, at considerable expense, installed 47 monitoring wells of the groundwater and 2 wells to capture contaminants in the A level zone. Level B was found to be insignificant and as to Level C BKN was not the source of the contamination. Franson submitted a graph that showed that the 2 wells installed to capture the contaminants were working. As of June, 1993 BKN was able to control the groundwater. A spill of chromic acid that occurred on August 27, 1992 in the building was cleaned up quickly and successfully. A DEP debriefing memo in 1989 indicated only minor violations. DEP representatives subsequently noted there were improvements in compliance after the 1992 and 1993 inspections. Based upon the above, the Court finds that the defendants demonstrated good faith in their efforts to comply with the statutory regulations.
 FINDINGS
As for the specific allegations, the Court finds:
 1. The allegations in Count One are against BKN and in Count Two against GG. They are essentially the same and will be addressed only as to Count One. GG was and is the responsible officer of BKN, but the Court sees no reason to assess penalties against him individually. He has acted in good faith, this is a family held corporation in which he has an interest and, therefore, penalties assessed against BKN will impact him as well. Even if the Court were to assess penalties against him individually, they would no doubt be paid by BKN.
 2. As for Count One dealing with Hazardous Waste Violations, the Court will address paragraph 6 which contain the relevant allegations. CT Page 9502
 6a. A 1,000 gallon underground hazardous waste tank was being inspected weekly instead of daily, and documentation was on a weekly instead of a daily basis. Violation, but not significant; penalty $500.
 6b. No written post closure plan for surface impoundments or lagoons. Violation. BKN did file a closure plan in 1983 and removed the contaminated soil by 1985. No response by DEA until 1992. No harm to environment; No penalty.
 6c. Failure to have liability insurance or letter of credit. Based upon testimony of insurance agent Falcigno and lack of equity by BKN as security for a letter of credit, defendants' Second and Third Special Defenses are sustained, the Court finding impossibility of performance. No penalty.
 6d. Failure to completely surround surface impoundments or lagoons; one side was without a fence. Violation: Insignificant because the former lagoons were no longer active and were covered by grass. No penalty.
 6e. No secondary containment for hazardous waste containers on loading dock. Violation. By 1993 inspection there were no hazardous waste containers on the loading dock. Penalty $1,000.
 6f. Failed to conduct hazardous waste determinations for solid wastes such as rags, EDMF, spent maskant, etc. The Court finds such determinations were made, but were not made available to DEP. Violation; penalty $500.
 6g. Failed to include a list of all emergency equipment at its facility in its contingency plan. Facility determines what emergency equipment it needs. Failure only to have a complete list. Technical violation; no practical significance; No penalty.
 6h. Failed to include an evacuation plan in its contingency plan. Violation but circumstances including small size of the facility make it practically unnecessary. No penalty.
 6i. Hazardous waste containers stored in loading dock area for more than 90 days. Violation but no safety hazard. Penalty $500.
CT Page 9503
 6j. Stored hazardous waste in open containers at or near the plating area. Violation. No harm occurred, but potential harm was there. Penalty $4,000.
 6k. Failed to timely submit first quarter groundwater monitoring report for 1993.
 6l. Failed to timely submit annual reports of groundwater monitoring for 1993, 1994 and 1995.
 6m. Failed to timely submit its 1993 second, third and fourth, and its 1994 first, second and third quarterly groundwater monitoring reports.
 6n. Failed to conduct groundwater monitoring during the first, third and fourth quarters of 1995.
As to paragraphs 6k through 6n, there was a violation. However, sufficient information was provided to DEP as to the containment of the chromic acid being successful. No harm done. Further, there was no chromium going off site in the groundwater that exceeded the regulatory levels. There was no impact on Beeman's Brook. Dr. Laura Green, defendants' expert witness and Dr. Gary Ginsberg, plaintiffs expert witness agreed that groundwater contamination was harmless because it did not reach drinking water. No penalty.
 6o. Stored ignitable and reactive wastes together. Violation. Potentially significant. Penalty $5,000.
 6p. Failed to determine that its 1,000 gallon tank system used to store hazardous waste which does not have secondary containment was not leaking or unfit for use. Violation as to the lack of determination only. Secondary containment not required for tank less than 15 years old. Tank was less than 15 years old when removed. Defendants' Fourth Special Defense is sustained. When tank was removed, it had no leaks. Any contaminants in soil came from spillage when filling the tank. Penalty $500.
 6q. Failed to label 1,000 gallon tank with the words "Hazardous waste". Violation. Insignificant; No penalty.
 6r. On November 16, 17, 1993, stored greater than 55 gallons of spent maskant in containers at or near the plating area. Storage was for purpose of determining whether maskant was recyclable and was, therefore, exempt from regulation. No violation. CT Page 9504
 6s. Stored nine open containers of hazardous waste when not adding or removing waste. Violation only as to the drum with chrome contaminated floor sweepings. No potential for harm because the sweepings were dry or damp with no volatile component and could easily be swept up in event of a spill. Penalty $500.
 6t. Failed to mark hazardous waste containers "Hazardous waste". Violation as to one 55 gallon drum containing methyl etheyl ketrone, a hazardous waste. Significant potential for harm because of possibility of its being mixed with another substance. The Court considers this a significant violation and assesses a penalty of $6,000.
 6u. Failure to maintain aisle space for containers of hazardous waste in the loading dock area. There was not aisle space as to two of the containers. since the regulation states it ". . . unless aisle space is not needed for any of these purposes", the Court is willing to accept Mr. Franson's opinion that while these two drums might have to be moved, the area did not obstruct movement of personnel and equipment. The Court, therefore, finds no violation.
 3. Counts Three and Four: Air Violations:
These counts against BKN and GG respectively are essentially the same and will be treated as such addressing only Count Three in the same manner as the Court addressed Counts One and Two.
The pertinent allegations are contained in paragraph five (5) of the Third Count and are essentially that BKN caused or permitted the emission of chromic acid, a hazardous air pollutant, from its facility at its discharge point in excess of the maximum allowable stack concentration (MASC). Defendants used polyballs on top of the chromic acid tanks (the source of the air pollutant) to control emissions from there. They were unsuccessful. In 1997 the defendants installed a scrubber system to control emissions which has proved to be successful. Dr. Gary Ginsberg (Ginsberg), plaintiffs expert on air omissions, indicated that such actions demonstrated good faith on the part of the defendants. Defendants presented as an expert witness on the subject of plaintiffs allegations, Dr. Rajat Gart, an environmental consultant (Gart), and Dr. Laura Green (Green). The Court was particularly impressed with the honesty and candor of Ginsberg. It also found Gart and Green to be honest and candid.
The MASC was 39.0 and BKN's own records showed that stack concentration was 56.8. However, the Hazardous Limiting Value (HLV) is the driving force behind the MASC, and that was not exceeded. The HLV for chromic CT Page 9505 acid is .25 micrograms per cubic meter. Experts on both sides agreed upon this. The highest HLV at BKN in an eight hour period was .02 well below the .25 HLV. Green stated that less than 2 micrograms per cubic meter of air is acceptable and poses no risk to human health. Ginsberg disagreed with this but agreed that there have been no studies demonstrating a cancer risk below 2 micrograms per cubic meter. The .2 micrograms per cubic meter found at BKN is much less than 2 micrograms per cubic meter.
Based upon Gart's testimony the Court finds the testing that DEP used to establish a MASC of 39.0 was flawed. The width and height of the plume were not considered nor was actual wind speed used. DEP did its testing (modelling) at the center of the plume at a height of forty feet whereas Gart did his modelling at a height of six feet where people would be more likely to breathe the air. DEP's modelling/testing was not realistic.
Although the Court finds a technical violation of the MASC, the Court finds that any violations were not harmful to human health. No penalty.
 4. Defendants claims that their expenditures for control of hazardous waste and air pollution should be credited against the penalties assessed by the Court. The Court cannot do this because these expenditures were made to comply with the law and were necessary for that purpose. Accordingly, the defendants' First Special Defense is denied. Judgment is entered for the plaintiff against BKN only in the amount of $18,500.00, without costs to either party.[1] Judgment is entered in favor of the defendant, Gary Greenberg.
5. As for plaintiffs request for injunctive relief, the Court believes that this litigation and the substantial costs defendants incurred in defending this litigation (i.e. attorneys' fees and fees of expert witnesses) have served as a "wake-up call" if one was needed, and the defendants need no further impetus to comply with the law. If violations should occur in the future, the DEP should get its act together by investigating and taking enforcement action more quickly. If that means the hiring of more people, so be it. That may be the price the State has to pay to achieve its goal of protecting the environment.
At the same time it is suggested that BKN make more use of its environmental consultant and/or hire a full time environmental compliance officer.
This litigation should have been unnecessary.
The plaintiffs requests for injunctive relief and reimbursement for costs and expenses are denied.[2]
CT Page 9506
Rittenband, JTR